UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF JOHNSTON,

    Plaintiff,

v.

PhD FITNESS, LLC,

    Defendant.

Case No. 16-cv-14152
Honorable Laurie J. Michelson
Magistrate Judge Stephanie Dawkins Davis

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [11]**

Plaintiff Jeff Johnston wanted a sports supplement with ingredients in quantities backed by clinical studies. Johnston visited a GNC store and purchased Pre-JYM and Post-JYM. Manufactured by Defendant PhD Fitness, LLC, the JYMs claimed to contain properly-dosed ingredients essential to gains in "size, strength, and endurance.

Johnston says he was deceived. The representations on the packaging convinced him he had a valuable sports supplement to add to his fitness regimen. But Johnston says the JYMs do not, as claimed, contain properly-dosed ingredients. And had he known "the true nature of the Products," he would not have purchased them. So "individually and on behalf of all those similarly situated," Johnston brings breach of warranty and fraud claims against the manufacturer of the supplements.

PhD Fitness moved to dismiss Johnston's claims. For the following reasons, the Court will grant in part, and deny in part, the motion to dismiss.

## I.

The Court presents the non-conclusory allegations of Johnston's amended complaint as fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

PhD Fitness produces sports supplements. The supplements are the brainchild of PhD Fitness, LLC member, Jim Stoppani, a self-proclaimed lab and gym rat. (R. 9, PID 171.) Combining his personal and professional interests, Stoppani created Pre-JYM and Post-JYM. The JYMs contain thirteen listed ingredients—things like Creatine, CarnoSyn, and Glutamine— allegedly helpful to boosting performance in the gym and building muscle after a workout. (R. 9, PID 157–70.)

On the Pre-JYM label, Stoppani represents, "Every ingredient in this formula is in a dose used in clinical studies and my own gym to produce significant gains in size, strength and endurance." (R. 9, PID 171.) And Stoppani tells would-be purchasers of Post-JYM that "[the listed] ingredients, in full research-backed doses, are in this bottle." (*Id.*)

In the summer of 2013, PhD Fitness agreed to an exclusive deal with Bodybuilding.com. (R. 9, PID 155.) Bodybuilding.com is an "online retail giant." (*Id.*) Under the terms of the exclusive deal, Bodybuilding.com offered the JYMs for purchase on its website. (*Id.*)

In its website marketing claims for Pre-JYM, PhD Fitness blames JYMs' competitors for "grossly underdosing ingredients." (R. 9, PID 156.) Then the webpage proclaims that Pre-JYM "contains 13 ingredients at proper, powerful doses." (*Id.*) The page also contains a bullet-point list of Pre-JYM's features, one of which is "Full doses of 13 science-backed ingredients." (R. 9, PID 157.)

Bodybuilding.com maintained a similar page for Post-JYM. The Post-JYM marketing claims state that the supplement has "proper dosing on all ingredients." (R. 9, PID 163.) The eight

ingredients listed on the bottle "are critical for recovery" and "[e]very single ingredient is included at the best dose to optimize repair and growth." (*Id.*)

Johnston alleges that thousands of people purchased the JYMs from Bodybuilding.com. (R. 9, PID 174.) In making those purchases, Johnston says the buyers all saw and believed the website's representations. (*Id.*)

After about three years, PhD Fitness ended its exclusive deal with Bodybuilding.com and began selling the JYM Products exclusively through GNC, another dietary supplement retail store. (R. 9, PID 170.) GNC's website contained pages for the JYM products, and the marketing claims on the GNC pages were identical to the claims on Bodybuilding.com. (R. 9, PID 171.)

Johnston purchased the JYMs from a GNC store. (R. 9, PID 154.) The GNC website product pages reflect the exact descriptive language found on the products' labels. (R. 9, PID 170–171.) For example, the products' labels represent that the JYMs contain research-backed doses of the listed ingredients. (R. 9, PID 154, 170–71.) Johnston wanted a supplement with ingredients dosed in quantities backed by clinical studies. Because Johnston believed Stoppani's explanation of the JYMs' dosing, he purchased the JYMs. (R. 9, PID 154.)

But at some point, Johnston came to learn that the claimed results from the dosing in the JYMs is not supported by the clinical studies. Johnston offers numerous examples of clinical studies he believes contradict certain marketing claims made by PhD Fitness. (*See* R. 9, PID 156–70.) For example, Pre-JYM contains two grams of CarnoSyn per serving, which the product label says "promote[s] muscle power, strength, endurance, and muscle growth." (R. 9, PID 157.) But Johnston cites research studies finding that CarnoSyn only has those effects at higher doses. (R. 9, PID 159–160.)

Disturbed by the "demonstrably false" claims (R. 9, PID 171) and "deceptive statements" (R. 9, PID 179) in the marketing and labeling of the JYMs' products, Johnston and two others filed suit in November 2016 (R. 1). Among other things, Johnston alleged breach of warranty, misrepresentation, and unjust enrichment claims. (R. 1, PID 28–40.) PhD moved to dismiss. (R. 7.) A month later, Johnston amended his complaint. (R. 9.) The amended complaint keeps the warranty, tort, and unjust enrichment claims, but drops the other two named plaintiffs. Johnston now sues both "individually and on behalf of all others similarly situated." (R. 9, PID 151.) PhD fitness again moved to dismiss. (R. 11.)

**II.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In reviewing a complaint, the plausibility standard governs. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires Johnston to plead "factual content that allows the [Court] to draw the reasonable inference that [PhD Fitness] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To show that PhD Fitness is liable for the misconduct alleged, the complaint's "factual content" must show "*entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Rejecting any conclusory statements or "threadbare recitals" of claim elements, the Court views the remaining facts in the light most favorable to Johnston. *Iqbal*, 556 U.S. at 678.

**III.**

PhD Fitness' motion addresses Johnston's three primary claims. First, PhD Fitness argues the warranty claims are barred because Johnston did not provide pre-suit notice, a requirement under Michigan law. (R. 11, PID 207.) The warranty claims are also barred, says PhD Fitness,

4

because Johnston was not in privity of contract with GNC, the seller. (R. 11, PID 209.) Regarding the misrepresentation claims, PhD Fitness says they fail because Johnston did not plead actual reliance on the marketing materials and because Johnston did not plead the claims with the particularity required by Federal Rule of Civil Procedure 9. (*Id.* at 210.) And finally, PhD Fitness says that the unjust enrichment claim cannot lawfully coexist with the contract-based warranty claims. (*Id.* at 215.)[1]

**A.**

The Court begins with PhD Fitness' argument that the warranty claims should be dismissed because Johnston did not provide pre-suit notice. PhD Fitness points to a portion of Michigan's Uniform Commercial Code requiring that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" Mich. Comp. Laws § 440.2607(3)(a). And it says that in *Gorman v. Am. Honda Motor Co., Inc.*, 839 N.W.2d 223, 232 (Mich. Ct. App. 2013), the Michigan Court of Appeals applied § 440.2607(3)(a) to hold that a buyer's failure to provide a remote manufacturer with pre-suit notice bars the buyer's breach of warranty claims. (R. 11, PID 207.) As Johnston sent PhD Fitness a letter styled as a "Notice and Pre-Suit Demand Concerning the Marketing and Labeling of Pre-JYM and Post-JYM products" on March 15, 2017—which was

---

[1] At the outset, the Court recognizes that PhD Fitness' filings take contradictory positions on the existence of a contract between the parties. To defend against the warranty claims, PhD Fitness says Johnston has not plausibly pled that a contract exists. (R. 11, PID 209.) But to counter the unjust enrichment claim, PhD Fitness says we have to take Johnston at his word that the two have a contract. (R. 11, PID 215.) Then, in its reply, PhD Fitness says there might be a contract, and if so, all of Johnston's claims are barred by the economic loss doctrine. (R. 16, PID 259.) The Court will not consider this last argument. *See Balsley v. LFP, Inc.*, 691 F.3d 747, 773 (6th Cir. 2012) (citing *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993)); *United States v. Jerkins*, 871 F.2d 598, 602 n. 3 (6th Cir. 1989) (citing *Knighten v. C.I.R.*, 702 F.2d 59, 60 (5th Cir. 1983)).

four months after first filing this lawsuit—PhD Fitness says Johnston did not comply with § 440.2607(3)(a) and *Gorman*.[2]

The Court agrees with PhD Fitness. Johnston simply ignores *Gorman*. He instead cites only to pre-*Gorman* district court opinions finding some wiggle room in Michigan Compiled Laws § 440.2607(3)(a). (R. 14, PID 235 (citing *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, 2010 WL 2813788 at *64–65 (D.N.J. July 9, 2010); *In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.*, 155 F. Supp. 2d 1069, 1110–11 (S.D. Ind. 2001)).) Johnston relies on these cases to argue that pre-suit notice is just a practical concern designed to provide some opportunity for a negotiated settlement. (R. 14, PID 236.) And because a negotiated settlement may still occur even after filing suit, Johnston says serving a complaint satisfies the notice requirement. (*Id*.)

But the *Gorman* court ruled that upon discovering a breach, the buyer must provide reasonable pre-suit notice to even a remote manufacturer lest the buyer be barred from any remedy. *Gorman*, 839 N.W.2d at 232; *see also Old Kent Bank v. Kal Kustom, Inc.*, 660 N.W.2d 384, 388–89 (Mich. Ct. App. 2003). Any remedy includes filing suit. *See American Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 256–57 (Mich. Ct. App. 2002). And filing suit does not amount to "reasonable" notice. *See Rosipko v. FCA US, LLC*, No. 15-11030, 2015 U.S. Dist. LEXIS 163455, at *15–16 (E.D. Mich. Dec. 7, 2015) (dismissing warranty claim in part because plaintiff lacked a "viable state-law warranty claim" due to plaintiff's failure to provide pre-suit notice); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1103–04 (N.D. Cal. 2015) (applying Michigan law and dismissing implied warranty claims because plaintiff did not

---

[2] The notice requirement only applies to Johnston's UCC claims. *See Bev Smith, Inc. v. Atwell*, 836 N.W.2d 872 (Mich. Ct. App. 2013).

6

notify the manufacturer before filing suit); *Gorman*, 839 N.W.2d at 229–30, 232 (barring any remedy, including suit, where plaintiff failed to provide pre-suit notice).

Importantly, Michigan's notice requirement is not just a formality. According to the Michigan Court of Appeals, the notice requirement serves:

> (1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure the nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements.

*American Bumper*, 652 N.W.2d at 256. Pre-suit notice allows the buyer and the breaching party to negotiate and propose settlements, including potential cure, without resort to litigation. *Id.* And if litigation is inevitable, pre-suit notice at least gives the breaching party some chance to investigate the factual basis for any claims against it—especially ones involving long-ago sales. *Id.*

Mailing a letter four months after filing suit does not serve the notice requirement's purposes. First, sending a post-lawsuit letter partly titled "Notice and Pre-Suit Demand" likely only added to PhD's surprise. And as litigation had already begun, the letter did not offer PhD a chance to first investigate the claims. Giving PhD Fitness a chance to investigate would have been helpful because Johnston sues on behalf of people who purchased the JYMs more than three years before Johnston filed suit. And the notice requirement is designed to encourage such negotiations before—not during—litigation. So Johnston cannot show that filing suit offered notice consistent with the purposes of the notice requirement.

Johnston responds that his March 15, 2017 letter preceded his March 16, 2017 amended complaint. But aside from the fact that an amended complaint does not initiate a lawsuit, the March 15 letter could not have given PhD Fitness adequate "pre-suit" notice. It is not plausible that a letter simply sent certified mail from Philadelphia on March 15 would arrive in California the next

7

day. Because PhD Fitness could not have received the letter before Johnston filed the amended complaint, it offered no notice at all. Let alone adequate pre-suit notice. So Johnston cannot claim that he at least provided reasonable notice prior to amending his complaint.

As Johnston has not satisfied Michigan's notice requirement, his express[3] and implied warranty claims (Counts 1 and 2) will be dismissed.

**B.**

Johnston also asserts claims of negligent and intentional misrepresentation. Johnston says he read the labels on the JYMs and bought the supplements thinking they would contain the ingredients dosed as advertised—in quantities backed by clinical study. But Johnston believes the labels misrepresented the dosing, and says he never would have bought the JYMs had he known their dosing claims did not conform to clinical studies.

PhD Fitness seeks dismissal of these claims as well. PhD Fitness says neither claim meets Federal Rule of Civil Procedure 9(b)'s heightened particularity requirement nor did Johnston properly plead reliance on the alleged misrepresentation. (R. 11, PID 210.)

**1.**

The Court turns first to PhD Fitness' claim that Johnston's pleading does not satisfy Rule 9(b)'s heightened particularity requirement. Courts in this district require intentional misrepresentation claims to meet Rule 9. *See, e.g.*, *Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 815–16 (E.D. Mich. 2009). Yet it is less obvious that Johnston must clear Rule 9's hurdle to state a claim for negligent misrepresentation. *See, e.g.*, *Smith v. Bank of Am. Corp.*, 485

---

[3] The Court further notes that Johnston's express warranty claims are subject to dismissal for failure to plausibly allege privity of contract with the defendant manufacturer. *See Montgomery v. Kraft Foods Global, Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) (citing *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 343 n.12 (Mich. Ct. App. 2009)).

8

F. App'x 749, 752–53 (6th Cir. 2012) (reasoning that Rule 9 applies to innocent misrepresentation yet confusing innocent misrepresentation and negligent misrepresentation); *Miller v. Laidlaw & Co. (UK) Ltd.*, No. 11-12086, 2013 U.S. Dist. LEXIS 43123, at *3–4 (E.D. Mich. Mar. 27, 2013) (reasoning that negligent misrepresentation is essentially a fraud claim and therefore subject to Rule 9); *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010) (citing other circuits to hold that Rule 9 does not apply to negligent misrepresentation). But if he does, the allegations of the amended complaint satisfy the Rule.

Federal Rule of Civil Procedure 9 requires a complaint allege "the circumstances constituting fraud" with particularity. Fed. R. Civ. P. 9(b). To allege "the circumstances" with particularity, a complaint must include the who, what, where, when, how, and why. *See Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009). Providing these details serves to notify a defendant such that it may provide an informed answer to fraud allegations. *See Arrowood Indem. Co. v. City of Warren*, 13-13938, 2015 U.S. Dist. LEXIS 205, at *14 (E.D. Mich. Jan. 5, 2015) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)).

The who, what, where, when, how, and why all appear in Johnston's amended complaint. Johnston alleges that on October 24, 2016, he went to a Hartland, Michigan GNC store where he personally read the JYMs' labels. On the labels, Johnston points to specific statements made by Stoppani, a member of PhD Fitness. Johnston's complaint quotes from Stoppani's statements. (R. 9, PID 171.) Johnston alleges that the label says: "Every ingredient in this formula is in a dose used in clinical studies and my own gym to produce significant gains in size, strength, and endurance." (R. 9, PID 170.) Another part of the label indicates that "[the listed] ingredients, in full research-backed doses, are in this bottle." (R. 9, PID 171.) Johnston also says that others

9

similarly situated read the same or similar material on Bodybuilding.com (R. 9, PID 155), and GNC.com (R. 9, PID 170–71). After reading the marketing claims on the product labels or product pages regarding the ingredients being properly dosed and believing them to accurately describe the ingredients contained in the JYMs, Johnston and others bought the supplements, desiring a product with clinically-backed dosing. Johnston's complaint then cites clinical studies to allege why the JYMs' dosing does not conform to the representations on the labels and in the marketing claims. (*See* R. 9, PID 156–170.) So in sum, Johnston's complaint points to specific statements, where and when he read them, explains why the statements are deceptive, and how he relied upon them by buying the products. As a result, Johnston has adequately pled his misrepresentation claims.

**2.**

Likewise, Johnston has properly pled reliance. Both negligent and intentional misrepresentation require Johnston to have justifiably relied on a misrepresentation made by PhD Fitness. *See Fejedelem v. Kasco*, 711 N.W.2d 436, 438 (Mich. Ct. App. 2006) (negligent misrepresentation); *Bergen v. Baker*, 691 N.W.2d 770, 774 (Mich. Ct. App. 2004) (intentional misrepresentation).

Again, Johnston alleges that while in the GNC on October 24, 2016, he read the following representation on the JYMs' label:

> Inside this bottle is decades of supplement research—from the lab and the gym. As a scientist, I have spent years researching ingredients that will produce results. As a gym rat, I have spent years benefiting from that research. Now it's your turn. *Every Ingredient in this formula is in a dose used in clinical studies and my own gym to produce significant gains in size, strength and endurance.\** I know it works because this is what I take before every one of my workouts. Let it work for you. Hit the JYM!

(R. 9, PID 170 (emphasis added).) Another label promised ingredients "in full research-backed doses." (R. 9, PID 171.) In all, the labels convey that PhD Fitness dosed the JYMs' ingredients based on Stoppani's personal experience and clinical studies. Johnston alleges that he and other buyers of the products saw the above representations either on the labels or on the Bodybuilding.com and GNC.com pages. After reading these representations and believing the products had the referenced, research-backed dosing, Johnston purchased the JYMs. So Johnston has pled justifiable reliance.

But PhD says the above labels contain an asterisk. That asterisk directs readers to this disclaimer: "*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." (R. 11, PID 213.) PhD Fitness thinks the disclaimer "applies to treatment of muscle fatigue, endurance, and any other physiological ailments in the statements Plaintiff claimed to rely upon." (R. 11, PID 213.) PhD Fitness says justifiable reliance is impossible based on the disclaimer.

In support it cites *Stotz v. Barrows*, No. 265154, 2007 Mich. App. LEXIS 1191 (Mich. Ct. App. May 1, 2007). Barrows was the salesman for a Ponzi schemer. *Id*. at *1–2. Barrows would connect potential investors to the schemer and then bow out. *Id.* at *2. Before bowing out, Barrows had the prospective investors sign a document disclaiming any representations and agreeing that Barrows was merely a middleman with no knowledge of the investments. *Id.* After the scheme collapsed, one of the investor victims sued Barrows for negligent misrepresentation. *Id.* at *8. The Court of Appeals held that the investor could not have justifiably relied on Barrows' representations about the investments as he signed a document agreeing Barrows knew nothing about them. *Id.* at *22–24. So *Stotz* supports that it is not justifiable to rely on specific statements specifically disclaimed. *Id.* at *24.

11

But given the allegations of the amended complaint, *Stotz* does not warrant summary dismissal of Johnston's misrepresentation claims. Johnston does not allege reliance on the JYMs being FDA approved, or curing disease, or treating "muscle fatigue," or "endurance," or "other physiological ailments." According to Johnston, he relied on the claims that the JYMs contained ingredients in effective doses backed by clinical studies. And the disclaimer is silent about research-backed dosing. So again, Johnston has adequately pled reasonable reliance.

3.

PhD Fitness further argues, in a footnote, that "an additional element of negligent misrepresentation is that 'the defendant and plaintiff were in privity of contract.'" (R. 11, PID 210.) They cite in support *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010). But *Yaldu* conflates the elements of negligent and innocent misrepresentation. *See Wargelin v. Bank of Am. Corp.*, No. 12-15003, 2013 U.S. Dist. LEXIS 146326, at *23 (E.D. Mich. Oct. 10, 2013) (citing Michigan case law to differentiate negligent and innocent misrepresentation). The elements of negligent misrepresentation require Johnston to prove that he "justifiably relied to his detriment on information prepared without reasonable care by one who owed [Johnston] a duty of care." *Unibar Maint. Servs. v. Saigh*, 769 N.W.2d 911, 919 (Mich. Ct. App. 2009) (quoting *Fejedelem*, 711 N.W.2d at 437). Privity is not an element. *See Wargelin*, 2013 U.S. Dist. LEXIS 146326, at *23. As privity is not an element, Johnston's amended complaint is not deficient for leaving it out.

In sum, Johnston's misrepresentation claims survive PhD Fitness' motion to dismiss.

C.

Because Johnston alleges the existence of a contract (*see* R. 9, PID 178), PhD Fitness thinks Johnston's unjust enrichment claim must fail. (R. 11, PID 215.) Yet Federal Rule of Civil

Procedure 8(a)(3) permits pleading in the alternative "when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (quoting *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833–34 (E.D. Mich. 2014)). As PhD Fitness, at one point at least, (*see* R. 11, PID 209), disputed the existence of an express agreement, at this stage there is nothing infirm about Johnston pleading unjust enrichment in the alternative. *See Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 182 (6th Cir. 1996) ("[I]f [the defendant] admits to the existence of a valid contract such that whether a contract exists is not at issue for the factfinder, then it will be appropriate for the district court to dismiss Terry Barr Sales' claims for unjust enrichment and promissory estoppel at that time."). Even after dismissing the warranty claims, it might remain an open question whether an express agreement governs the parties' conduct. So the fact that the warranty claims have been dismissed does not change the analysis. *See Dietec Co., Ltd. v. Osirius Grp., LLC*, No. 17-10372, 2017 U.S. Dist. LEXIS 200276, at *30–32 (E.D. Mich. Dec. 7, 2017); *see also Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 692 (E.D. Mich. 2012) (finding alternative pleading to be "particularly appropriate" where defendants disputed that any enforceable contract existed between the parties); *Date v. Sony Electronics, Inc.*, No. 07-15474, 2010 U.S. Dist. LEXIS 96870, *12 (E.D. Mich. September 16, 2010) (plaintiffs can plead their claim for unjust enrichment as an alternative to their claims for breach of contract so long as questions of fact exist as to the existence of a claim based on contract).

Nor has Johnston failed to plausibly plead unjust enrichment. Unjust enrichment has two elements: "(1) [the] receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991). Johnston pleads the following: he bought the JYMs because they claimed to contain

13

research-backed dosing; they do not; PhD Fitness has not refunded his money; and PhD fitness retains a benefit they do not deserve. Johnston has plausibly pled unjust enrichment.

**D.**

Finally, PhD Fitness wants to strike as irrelevant the paragraphs in the amended complaint dealing with Bodybuilding.com because Johnston never purchased the JYMs through Bodybuilding.com. (R. 11, PID 216.)

Federal Rule of Civil Procedure 12(f) permits the Court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) is to be used "sparingly." *Anderson v. United States*, 39 F. App'x 132, 135 (6th Cir. 2002) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). Used sparingly means "only when required for the purposes of justice" and where "the pleading has no possible relation to the controversy." *Id.*

At this stage of the case, it is premature to determine whether the information is "redundant, immaterial, impertinent, or scandalous." Johnston appears to include the information as the factual predicate for his class allegations. It is entirely plausible that others similarly situated to him purchased the JYMs through Bodybuilding.com. So the Court will not strike the paragraphs pertaining to Bodybuilding.com.

**IV.**

For the foregoing reasons, PhD Fitness' motion to dismiss (R. 11) is GRANTED IN PART and DENIED IN PART. In particular, Johnston's warranty claims are dismissed but his negligent misrepresentation, intentional misrepresentation, and unjust enrichment claims survive. Moreover,

PhD Fitness' request to strike factual material pursuant to Rule 12(f) is denied.

                                                              s/Laurie J. Michelson
                                                              LAURIE J. MICHELSON
Dated: January 31, 2018                 U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2018.

                                                              s/Keisha Jackson
                                                              Case Manager